UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| KENNETH MATTHEW HARRIS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JIANGSU ASG EARTH ENVIRONMENT ) <br> PROTECTION SCIENCE AND ) <br> TECHNOLOGY CO., LTD., et al., ) <br> ) <br> Defendants. ) <br> ) <br> ) | Civil No. 13-44-GFVT <br><br> **MEMORANDUM OPINION** <br> **&** <br> **ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Kenneth Harris seeks damages in excess of three million dollars against Defendant Jiangsu ASG, the Chinese entity responsible for manufacturing a centrifuge which permanently injured Harris's right hand. Harris filed for default judgment against Jiangsu ASG, and the Court ordered Harris to provide affidavits and other supporting documentation to assist its determination of the appropriate damages to award. *See* Fed. R. Civ. P. 55(b)(2). Having considered the record and for the reasons that follow, the Court GRANTS Harris's motion for default judgment and awards damages to Harris in the amount of $2,890,066.57.

**I**

In 2012, Plaintiff Kenneth Harris sustained an unfortunate work-related injury which ultimately resulted in the amputation of his right hand. Harris was operating a plastic recycling system which included a centrifuge, and Harris's hand became caught in the centrifuge. His

hand sustained permanent damage and later had to be amputated. Harris subsequently sued the designer and manufacturer of the centrifuge, Jiangsu ASG Earth Environment Protection Science and Technology Co., Ltd., as well as two companies responsible for importing and/or transporting the centrifuge, JAS Forwarding (USA), Inc., and China Container Line, Ltd. Over the course of the last several years, Harris has resolved his claims against JAS and China Container Line. [*See* R. 60; R. 68.] Harris's claims against Jiangsu ASG remain outstanding.

Jiangsu ASG, a Chinese entity, failed to respond to Harris's complaint or otherwise make an appearance in this action. After the Court directed Harris to provide information ensuring Jiangsu ASG had been properly served pursuant to the Hague Convention, default was entered against Jiangsu ASG and Harris moved for default judgment. Harris also requested a hearing consistent with Federal Rule of Civil Procedure 55(b)(2)(B), which allows the Court to conduct hearings or make referrals "when, to enter or effectuate judgment, it needs to . . . determine the amount of damages" at issue. The Court held a telephonic status conference with counsel to discuss the possibility of proceeding by way of affidavit, as the only witness at an evidentiary hearing would be Mr. Harris and the only exhibits his medical records. [*See* R. 74; R. 77.] Counsel agreed, and Mr. Harris then filed in the record various documents including a memorandum in support of his motion for default judgment, which requests the following damages: (1) past and present medical expenses of $127,066.57; (2) future medical expenses of $250,000.00; (3) loss of future wages in an amount between $553,500.00 and $1,025,000.00; and (4) past, present, and future pain and suffering in the amount of $2,000,000.00. [*See* R. 80 at 3.]

In support of the requested damage amounts, Harris presented the judgment from his workers' compensation action; an affidavit memorializing Harris's testimony about his injury; and two photographs. [R. 78-1; R. 80-1; R. 80-2.] Collectively, these supporting documents

provide the following factual information for the Court's consideration. The documents indicate that Harris's medical expenses paid through November 7, 2013, amounted to $127,066.57. [R. 80-1 at 2.] Harris's future medical expenses are anticipated to be at least $250,000.00. [R. 78-1 at 2; *see also* R. 80-1 at 3.] Harris was earning $492.38 per week as a general laborer at the time of the injury. [R. 78-1 at 2.] A physician has determined Harris has a fifty-four percent "impairment rating" in light of his injury, which plaintiff's counsel has indicated affects Harris's future earning capacity. [R. 80-1 at 2; R. 80 at 5.] Harris was twenty-four at the time of his injury and twenty-nine as of the time he filed his memorandum in support of default judgment. [R. 78-1 at 2.] Two photos of Harris demonstrate that he has, indeed, suffered the total amputation of his right hand. [R. 80-2.] And Harris has testified in his affidavit that he believes his past, present, and future pain and suffering "warrants at least $2,000,000.00 in compensatory damages." [R. 78-1 at 2.]

Finally, Harris's affidavit and memorandum both indicate his life expectancy is seventy-eight years, according to the Social Security Administration. [*Id.*; R. 80 at 2.] However, the Court's independent research of Harris's life expectancy, using the date of birth supplied on the worker's compensation judgment, resulted in a total life expectancy of eighty-two years. *See* Life Expectancy Calculator, Social Security Online, https://www.ssa.gov/cgi-bin/longevity.cgi (last accessed June 29, 2017).

## II

The Court is tasked with calculating the amount of damages to award Mr. Harris in this default judgment action, which arises under Kentucky law and is before the Court on diversity jurisdiction. The Sixth Circuit has summarized the relevant law as follows:

In Kentucky, one injured by another's negligence is entitled to recover full

> compensation for all damages proximately resulting from that negligence. The amount of damages for personal injuries in a particular case must be determined by the character and extent of the injuries and the consequences thereof. Properly included when computing the amount are damages to property, pain and suffering, and medical expenses incurred or reasonably certain thereafter to be incurred as the direct and proximate result of injuries received. Damages further include loss of earnings and compensation for future impairment of earning power.

*Duty v. U.S. Dep't of Interior*, 735 F.2d 1012, 1014 (6th Cir. 1984) (internal citations omitted). The permanency of an injury is also a key consideration for the Court in determining an appropriate award of damages. *Id.*; *Tichenor v. Roll*, 253 S.W.2d 13, 14 (Ky. 1952).

Questions concerning the amount of damages to award are questions of fact. *Duty*, 735 F.2d at 1014-15; *see also Eves v. Am. Clearinghouse, Inc.*, 316 F. App'x 393, 396 (6th Cir. 2008). Before awarding damages, the Court should make findings of fact and subsequent conclusions of law as to each amount of damages awarded pursuant to Federal Rule of Civil Procedure 52. *Duty*, 735 F.2d at 1014-15. Put another way, the Court should "enumerate the amount of its awards attributable to damage to property, past and future pain and suffering, medical expenses incurred or reasonably certain thereafter to be incurred as the direct and proximate result of injuries received in the accident, and loss of earnings, including future impairment of earning power." *Id.* at 1015.

**A**

Harris has not requested any damages for loss of property, but he has requested $127,066.57 in past medical expenses. [R. 80 at 4.] Based on the information contained in the workers' compensation judgment [R. 80-1], the Court finds that amount does accurately reflect Harris's past medical bills, and the Court awards that amount to Harris. *See Ky. Cent. Ins. Co. v. Schneider*, 15 S.W.3d 373, 374 (Ky. 2000) (authorizing damages for "the expense of cure" in

comparable tort actions). As for future medical expenses, Harris has testified via his affidavit that he expects to incur at least $250,000.00 in future medical expenses [R. 78-1 at 2], and the workers' compensation judgment also references $250,000.00 in future medical expenses. [*See* R. 80-1 at 3.] Based on the present record, the Court finds that $250,000.00 is, indeed, an adequate estimation of Harris's future medical needs, and the Court will also award that amount of money to Harris. *See Wood v. Wyeth-Ayerst Laboratories*, 82 S.W.3d 849, 856 (Ky. 2002) (noting Kentucky laws allows future medical damages as a remedy in tort actions).

**B**

As for Harris's earning potential, the record indicates that Harris previously had an earning potential of at least $25,000.00 per year. At the time of the accident, he was earning $492.38 per week as a general laborer, which would amount to $25,603.76 per annum. [*See* R. 78-1 at 2.] The fifty-four percent impairment rating noted in the workers' compensation judgment suggests Harris is no longer able to achieve his full earning potential but is, instead, limited to fifty-four percent of that. Accordingly, Harris asks the Court to reasonably conclude his future earning potential is between "$553,500.00 (41 years x $25,000 x .54) and $1,025,000.00 (41 years x $25,000 x 1) (100% impairment))." [R. 80 at 5.] These calculations take into account Harris's remaining years of life expectancy, his annual earning potential at the time of the accident, and his impairment rating.

The record contains no evidence to suggest Harris is one hundred percent impaired beyond his unsupported assertion that "[d]ue to [his] injury, [he] can no longer work." [R. 78-1 at 2.] Although Harris may no longer be able to keep his job at the recycling center, the record before the Court does not lead the Court to reasonably conclude Harris faces no opportunities for meaningful employment, notwithstanding the loss of his hand. The Court therefore finds the

future earning potential calculation which takes into account Harris's fifty-four percent impairment rating to be more appropriate than the calculation suggesting a one hundred percent impairment rating.

However, the Court does not find the appropriate calculation to equal $553,500.00 as Harris's memorandum suggests. In the memorandum, counsel's calculation accounted for forty-one years of future life, based off of a seventy-eight year life expectancy.[1] As noted above, the Social Security Administration's most recent life expectancy calculator indicates Mr. Harris's life expectancy is eighty-two years total, with fifty-two and a half years left of life and a normal retirement age of sixty-seven. *See* Life Expectancy Calculator, Social Security Online, https://www.ssa.gov/cgi-bin/longevity.cgi (last accessed June 29, 2017). Assuming Harris retires normally at age sixty-seven, his remaining years of future working life amount to thirty-eight. *Id.* The appropriate calculation in light of these numbers, then, is (38 years x $25,000 x .54), which equals $513,000.00. The Court awards damages in this amount to Mr. Harris for his loss of future wages. *See Schneider*, 15 S.W.3d at 374 (allowing damages to be awarded "for any permanent reduction of the power to earn money").

## C

Harris also requests $2,000,000.00 in pain and suffering damages. Harris's affidavit reads "I feel my past, present, and future pain and suffering warrants at least $2,000,000.00 in compensatory damages." [R. 78-1 at 2.] Relatedly, Harris's memorandum states:

> Based upon undersigned counsel's experience, Plaintiff's requested pain and

---

[1] The Court does not know why counsel chose to use forty-one years of remaining life for purposes of these calculations. Even if Harris's life expectancy was only seventy-eight years, as counsel suggested, he would still enjoy forty-nine years of remaining life. Perhaps counsel assumed Mr. Harris would retire at age seventy? Rather than guess, the Court uses the life expectancy estimate and normal retirement age identified by the Social Security Administration's online calculator.

> suffering award of $2,000,000.00, which is approximately 5 times Plaintiff's past, present, and future medical expenses, is a reasonable request within Central Kentucky given that Plaintiff lost his dominant hand, the traumatic nature of amputation's [sic] in general and the amputation in this case, the fact that Plaintiff lost his hand while working, and Plaintiff's age and well-being at the time of the incident.

[R. 80 at 5.] No additional information is provided.

There is some support for the notion that a five to one ratio for awards of pain and suffering in comparison to medical bills is reasonable under Kentucky law. *See, e.g.*, *Fisher v. May*, No. 3:11-cv-00592, 2012 WL 1964564 (W.D. Ky. May 31, 2012) (noting that Kentucky courts have upheld pain and suffering verdicts for ratios even higher than five to one and collecting cases). But Harris asks the Court to conclude such a five to one ratio is appropriate in this case on a very limited record. While the record contains few details as to the nature, severity, and duration of Harris's pain, the Court can reasonably infer Harris experienced significant physical pain and emotional trauma as a result of his hand injury and subsequent amputation. After evaluating the damages awarded in comparable Kentucky cases, the Court determines an amount of $2,000,000.00 is an appropriate pain and suffering award.

### D

Because all of Harris's claims are essentially products liability claims, they are potentially subject to Kentucky's procedure for allocution of fault in tort actions. *See Morales v. Am. Honda Motor Co., Inc.*, 151 F.3d 500, 518-19 (6th Cir. 1998). The relevant statute provides:

> In all tort actions, including products liability actions, involving fault of more than one (1) party to the action, including third-party defendants and persons who have been released under subsection (4) of this section, the court, unless otherwise agreed by all parties, . . . shall make findings indicating:
>
> > (a) the amount of damages each claimant would be entitled to recover if contributory fault is disregarded; and

7

> (b) the percentage of the total fault of all the parties to each claim that is allocated to each claimant, defendant, third-party defendant, and person who has been released from liability under subsection (4) of this section.

KRS § 411.182(1). The statute goes on to direct the Court to "consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed." KRS § 411.182(2). The Court should "determine and state in the judgment each party's equitable share of the obligation to each claimant in accordance with the respective percentages of fault." KRS § 411.182(3).

Also, the statute explains the effect of a settlement agreement or other release on the damage calculation:

> A release, covenant not to sue, or similar agreement entered into by a claimant and a person liable, shall discharge that person from all liability for contribution, but it shall not be considered to discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons shall be reduced by the amount of the released persons' equitable share of the obligation, determined in accordance with the provisions of this section.

KRS § 411.182(4). However, Kentucky law has also made clear that "[f]ault may not be properly allocated to a party, a dismissed party or settling nonparty unless the court or the jury first *finds that the party was at fault*; otherwise, the party has no fault to allocate." *Owens Corning Fiberglas Corp. v. Parrish*, 58 S.W.3d 467, 471 n. 5 (Ky. 2001) (emphasis added); s*ee also Morgan v. Scott*, 291 S.W.3d 622, 634 (Ky. 2009) ("[F]ault may be apportioned only among those against whom the evidence of liability was sufficient to allow submission of the issue of fault to the jury."); *Insight Ky. Partners II, L.P. v. Preferred Automotive Servs., Inc*., 514 S.W.3d 537, 552-53 (Ky. 2016) (same).

In this case, Mr. Harris has already resolved his claims against Defendants JAS Forwarding and China Container Line. [R. 60; R. 68.] But the Court is privy to no information

about the actual fault of those two parties, and the record contains no evidence of their liability. Under Kentucky law, "[t]he mere fact that a party has been sued or has settled does not permit the factfinder to allocate part of the total fault to that party." *Owens Corning Fiberglas*, 58 S.W.3d at 471 n. 5. The only evidence of fault before the Court is the fault of Jiangsu ASG, having essentially admitted the plaintiff's allegations by virtue of its failure to appear and respond. *See* Fed. R. Civ. P. 36; Fed. R. Civ. P. 55. Accordingly, the Court considers Jiangsu ASG the only party at fault in this case and will not allocate the awarded damages. *See* KRS § 411.182(1) (calling for allocation of fault in products liability actions where multiple parties are involved); *Insight*, 514 S.W.3d at 552-53.

### III

Therefore, for the reasons stated above and consistent with Federal Rule of Civil Procedure 55(b), the Court **ORDERS** that Plaintiff Harris's motion for default judgment [R. 75] is **GRANTED**. Harris shall be awarded $127,066.57 in past medical expenses; $250,000.00 in future medical expenses; $513,000.00 for loss of future wages; and $2,000,000.00 for pain and suffering. Judgment against Jiangsu ASG in the amount of $2,890,066.57 shall be entered contemporaneously herewith.

This the 13th day of July, 2017.

Gregory F. Van Tatenhove
United States District Judge